NOS. 08-0142 08-0208 & 08-0427

IN RE DELTA LLOYDS INSURANCE COMPANY OF HOUSTON, TEXAS
IN RE HURRICANE RITA HOMEOWNERS' CLAIMS
IN RE SOUTHEAST SURPLUS UNDERWRITERS GENERAL AGENCY, INC.

ON REVIEW BY THE MULTIDISTRICT LITIGATION PANEL

PRESIDING JUDGE PEEPLES, joined by JUSTICE MCCLURE, concurring in part and dissenting in part.

First-party insurance lawsuits have been filed in several southeast Texas counties involving damage caused by Hurricane Rita in September 2005. Three groups of defendant insurers have filed motions seeking assignment of certain cases to a single court for pretrial handling. We are authorized to grant these motions if the cases are "related" and if assigning them to one pretrial court would serve the interests of convenience, efficiency, and justice. *See* TEX. R. JUD. ADMIN. 13.2(f), 13.3(a), 13.3(*l*).

The majority has granted the motions filed by Delta and Southeast, but it has denied (because they are not related) the identical motion filed by four other insurers, who seek a pretrial court in identical cases[1] arising from the same hurricane. The entire panel agrees that it would be convenient

---

[1] In every case the pleadings allege that each insurer and its agents: (a) wrongfully denied plaintiff's claims for repairs, (b) didn't adequately compensate plaintiff, (c) misrepresented that the damage was not covered, (d) didn't try to settle fairly, (e) failed to explain the reasons for their inadequate offer, (f) failed to affirm or deny coverage within a reasonable time, (g) refused to fully compensate plaintiffs, (h) failed to conduct a reasonable investigation, (i) performed an outcome-oriented investigation, (j) didn't timely acknowledge the claim or timely begin its investigation, (k) failed to accept or deny the claim within 15 days, (*l*) didn't pay the claim without delay, and (m) failed to pay the claim after liability was reasonably clear, thereby breaching its common law duty of good faith and fair dealing. After these allegations, each petition says the insurers engage in this conduct as a matter of course:

and efficient for our legal system to have one pretrial court handle the Delta and Southeast cases. None of us disagree about that. We do disagree about what it means for cases to be "related"—that is, cases that involve "one or more common issues of fact." *See* TEX. R. JUD. ADMIN. 13.1(b), 13.2(f).

I would hold that the fact that one disaster caused every bit of damage in these cases makes them related. This would not mean that in the future all cases arising from common disasters would automatically be given a pretrial MDL court; the convenience and efficiency elements would still have to be proved, as they have been here. The majority's view of relatedness is very different. It holds that the cases against Delta and Southeast are related to each other only because the homeowners have made the same allegations against Delta and Southeast and issued the same repetitive discovery demands to them[2]; these constitute common questions of fact, which Delta and

---

> Plaintiff's experience is not an isolated case. The acts and omissions [the insurer] committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of [the insurer] with regard to handling these types of claims. [The insurer's] entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders.

In other words, all these cases are linked by the "general business practice" and the "unfairly designed" process. Each case will involve the same discovery, again and again, as shown in footnote two below.

[2] In each case plaintiffs seek extracontractual damages by pleading that insurance code standards were violated and the claims were handled in bad faith. They allege that the defendants' "general business practice" is tilted toward denying claims. See footnote one above.

In addition to seeking routine discovery of case-specific information, plaintiffs have, for example, sought the following documents from the defendants in all cases: (a) training manuals and policy manuals for adjusters of homeowner claims, (b) records concerning the criteria for choosing vendors and contractors, (c) instruction materials and guides for those who handle claims of bad faith or unfair claims settlement practices, and (d) correspondence concerning inappropriate behavior of any person associated with the handling of property claims.

They also seek in all cases the following documents, "limited to the last five (5) years": (a) communications from insurance regulators, (b) documents concerning net worth, (c) property-damage complaints and lawsuits by other insureds, (d) advertisements, (e) files and reports of contractors and roofers used or approved by the insurer, (f) all other files handled by the adjuster in plaintiff's case, (g) lists of attendees and dates and locations of meetings for staff and adjusters concerning property claims, and (h) all affidavits and depositions given in other cases by the employees who have handled plaintiff's claim.

Southeast will have to answer again and again. I agree with that holding. But, says the majority, the four other insurers face extracontractual claims (and the allegations and discovery summarized in footnotes one and two) in only one case per insurer,[3] and therefore their one case is not related to any other case. They will answer the extracontractual claims only in their lone case, but not repetitively in others. Apparently, in a future case if dozens of lawsuits are brought against dozens of different defendants arising from one natural disaster, they would not necessarily be related under today's holding. All this seems to me an unduly restrictive understanding of relatedness.

What does relatedness mean? It should be a threshold matter for us. Convenience and efficiency should be our real inquiry; they are the heart of our statute and rule.[4] "One or more common issues of fact" does not mean that we balance the similarities against the differences and decide whether the cases are more like than unlike.[5] Balancing and weighing pertain to the issues of convenience and efficiency, not relatedness. Nor does relatedness mean that the common

For other periods of time, they seek in all cases: (a) correspondence and lawsuits involving "vendors, staff or management" concerning property claims since 2000, (b) all reports and correspondence containing names of corporate representatives who testified in property damage lawsuits since 1999, (c) "any and all" correspondence to and from vendors concerning property damage claims since 2000, "including but not limited to computer disks, e-mails, paperwork, and manuals," and (d) documents, correspondence, and reports concerning suits filed against defendant nationwide containing an element of property damage since 1999.

The entire panel has held that because of such discovery requests the cases against Delta and Southeast are related, and the use of one pretrial court will serve the goals of convenience to the parties and judicial efficiency.

[3] Actually, one of the carriers is defending two cases, but this does not rise to the same level of relatedness as Delta's four.

[4] There is good reason why the MDL statute and rule require *factual* relatedness. If we could assign cases to a single pretrial court whenever they were legally related—but not factually related—we would in effect be able to create statewide complex litigation courts for cases involving DTPA, products liability, medical malpractice, and insurance coverage issues. Neither the Legislature (by its statute) nor the Supreme Court (by its rule) intended for us to have such sweeping power. Our authority was therefore limited to transferring factually related cases to a pretrial court when transfer would promote convenience and efficiency.

[5] In *In re Silica Prods. Litig.,* 166 S.W.3d 3, 6 (Tex. M.D.L. Panel 2004), we said, "Rule 13 . . . allows transfer to a pretrial judge when there are common fact issues, even though in a given case the common issues might not outweigh the individual, case-specific issues."

3

question (or questions) of fact must be "material" because the Legislature conciously rejected that word. When the Legislature defined "related" as "involving one or more common questions of fact," it modified earlier versions of the bill that would have placed the word *material* in front of the phrase *issues of fact*, and it also changed the plural "issues" to "one or more issues."[6] And when the supreme court meant "material fact" in other rules, it said so.[7]

The proper relatedness requirement is satisfied here, where one enormous hurricane is the context and background for each of these cases. The majority says that the "occurrence" of the hurricane is not a disputed fact. That is true. Everyone agrees that Hurricane Rita occurred. But the hurricane is the foundation and the context for all these cases. It stands in the background and cannot be escaped. It is inconceivable that any of these cases can be tried without substantial evidence concerning Hurricane Rita and what it did. Each case will unfold against the background of related fact questions such as whether Rita's wind, and the rising water and rainfall it produced, were of sufficient magnitude to damage residential structures and foundations as alleged.[8]

---

[6] The Legislature dropped the word "material" and also made clear that one common question of fact was enough. *Compare* the House and engrossed versions of H.B.4 ("'Related' means that cases involve common material issues of fact") *with* the later Senate version and enrolled and final versions (panel may transfer "cases involving one or more common questions of fact"). The successive versions of the bill are available at:
               *http://www.capitol.state.tx.us/BillLookup/Text.aspx?LegSess=78R&Bill=HB4.*

[7] Rule 166a, for example, authorizes a traditional summary judgment when there is "no genuine issue of material fact" and the movant is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). The rule also refers to issues of "material fact" in subdivisions (e) and (i). By contrast, rule 174 refers simply to "common question of law or fact."

[8] In addition to the background presence of Hurricane Rita, there are specific common issues in these cases, which are already being contested. We are told that several homeowners sought help from FEMA, that there are limits on what assistance can be accepted from FEMA and also from an insurer, and that FEMA records cannot be obtained through discovery without the homeowner's consent. These assertions—some of them factual and undenied and therefore accepted as true under Rule 13.3 (j)—would benefit from uniform and consistent treatment in each case. In addition, plaintiffs seek attorneys' fees in each case, including a 40% contingent fee; defendants say they want to inquire about counsel's economies of scale, since each of these cases has virtually identical form petitions, interrogatories, and requests for production.

These cases from the same massive hurricane are related. It would serve the goals of convenience, efficiency, and justice to have one pretrial court decide all the common issues the same way and without inconsistencies. This is all that Rule 13 requires. Indeed the rule was designed to cover cases like these. I would grant the motions as to all movants.

 

_____
David Peeples
Presiding Judge

**OPINION DELIVERED:** September 5, 2008

Nos. 08-0142 08-0208 & 08-0427

IN RE DELTA LLOYDS INSURANCE COMPANY OF HOUSTON, TEXAS
IN RE HURRICANE RITA HOMEOWNERS' CLAIMS
IN RE SOUTHEAST SURPLUS UNDERWRITERS GENERAL AGENCY, INC.

ON REVIEW BY THE MULTIDISTRICT LITIGATION PANEL

PRESIDING JUDGE PEEPLES, joined by JUSTICE MCCLURE, concurring in part and dissenting in part.

First-party insurance lawsuits have been filed in several southeast Texas counties involving damage caused by Hurricane Rita in September 2005. Three groups of defendant insurers have filed motions seeking assignment of certain cases to a single court for pretrial handling. We are authorized to grant these motions if the cases are "related" and if assigning them to one pretrial court would serve the interests of convenience, efficiency, and justice. *See* TEX. R. JUD. ADMIN. 13.2(f), 13.3(a), 13.3(*l*).

The majority has granted the motions filed by Delta and Southeast, but it has denied (because they are not related) the identical motion filed by four other insurers, who seek a pretrial court in identical cases[1] arising from the same hurricane. The entire panel agrees that it would be convenient

---

[1] In every case the pleadings allege that each insurer and its agents: (a) wrongfully denied plaintiff's claims for repairs, (b) didn't adequately compensate plaintiff, (c) misrepresented that the damage was not covered, (d) didn't try to settle fairly, (e) failed to explain the reasons for their inadequate offer, (f) failed to affirm or deny coverage within a reasonable time, (g) refused to fully compensate plaintiffs, (h) failed to conduct a reasonable investigation, (i) performed an outcome-oriented investigation, (j) didn't timely acknowledge the claim or timely begin its investigation, (k) failed to accept or deny the claim within 15 days, (*l*) didn't pay the claim without delay, and (m) failed to pay the claim after liability was reasonably clear, thereby breaching its common law duty of good faith and fair dealing. After these allegations, each petition says the insurers engage in this conduct as a matter of course:

and efficient for our legal system to have one pretrial court handle the Delta and Southeast cases. None of us disagree about that. We do disagree about what it means for cases to be "related"—that is, cases that involve "one or more common issues of fact." *See* TEX. R. JUD. ADMIN. 13.1(b), 13.2(f).

I would hold that the fact that one disaster caused every bit of damage in these cases makes them related. This would not mean that in the future all cases arising from common disasters would automatically be given a pretrial MDL court; the convenience and efficiency elements would still have to be proved, as they have been here. The majority's view of relatedness is very different. It holds that the cases against Delta and Southeast are related to each other only because the homeowners have made the same allegations against Delta and Southeast and issued the same repetitive discovery demands to them[2]; these constitute common questions of fact, which Delta and

---

Plaintiff's experience is not an isolated case. The acts and omissions [the insurer] committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of [the insurer] with regard to handling these types of claims. [The insurer's] entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders.

In other words, all these cases are linked by the "general business practice" and the "unfairly designed" process. Each case will involve the same discovery, again and again, as shown in footnote two below.

[2] In each case plaintiffs seek extracontractual damages by pleading that insurance code standards were violated and the claims were handled in bad faith. They allege that the defendants' "general business practice" is tilted toward denying claims. See footnote one above.

In addition to seeking routine discovery of case-specific information, plaintiffs have, for example, sought the following documents from the defendants in all cases: (a) training manuals and policy manuals for adjusters of homeowner claims, (b) records concerning the criteria for choosing vendors and contractors, (c) instruction materials and guides for those who handle claims of bad faith or unfair claims settlement practices, and (d) correspondence concerning inappropriate behavior of any person associated with the handling of property claims.

They also seek in all cases the following documents, "limited to the last five (5) years": (a) communications from insurance regulators, (b) documents concerning net worth, (c) property-damage complaints and lawsuits by other insureds, (d) advertisements, (e) files and reports of contractors and roofers used or approved by the insurer, (f) all other files handled by the adjuster in plaintiff's case, (g) lists of attendees and dates and locations of meetings for staff and adjusters concerning property claims, and (h) all affidavits and depositions given in other cases by the employees who have handled plaintiff's claim.

Southeast will have to answer again and again. I agree with that holding. But, says the majority, the four other insurers face extracontractual claims (and the allegations and discovery summarized in footnotes one and two) in only one case per insurer,[3] and therefore their one case is not related to any other case. They will answer the extracontractual claims only in their lone case, but not repetitively in others. Apparently, in a future case if dozens of lawsuits are brought against dozens of different defendants arising from one natural disaster, they would not necessarily be related under today's holding. All this seems to me an unduly restrictive understanding of relatedness.

What does relatedness mean? It should be a threshold matter for us. Convenience and efficiency should be our real inquiry; they are the heart of our statute and rule.[4] "One or more common issues of fact" does not mean that we balance the similarities against the differences and decide whether the cases are more like than unlike.[5] Balancing and weighing pertain to the issues of convenience and efficiency, not relatedness. Nor does relatedness mean that the common

For other periods of time, they seek in all cases: (a) correspondence and lawsuits involving "vendors, staff or management" concerning property claims since 2000, (b) all reports and correspondence containing names of corporate representatives who testified in property damage lawsuits since 1999, (c) "any and all" correspondence to and from vendors concerning property damage claims since 2000, "including but not limited to computer disks, e-mails, paperwork, and manuals," and (d) documents, correspondence, and reports concerning suits filed against defendant nationwide containing an element of property damage since 1999.

The entire panel has held that because of such discovery requests the cases against Delta and Southeast are related, and the use of one pretrial court will serve the goals of convenience to the parties and judicial efficiency.

[3] Actually, one of the carriers is defending two cases, but this does not rise to the same level of relatedness as Delta's four.

[4] There is good reason why the MDL statute and rule require *factual* relatedness. If we could assign cases to a single pretrial court whenever they were legally related—but not factually related—we would in effect be able to create statewide complex litigation courts for cases involving DTPA, products liability, medical malpractice, and insurance coverage issues. Neither the Legislature (by its statute) nor the Supreme Court (by its rule) intended for us to have such sweeping power. Our authority was therefore limited to transferring factually related cases to a pretrial court when transfer would promote convenience and efficiency.

[5] In *In re Silica Prods. Litig.,* 166 S.W.3d 3, 6 (Tex. M.D.L. Panel 2004), we said, "Rule 13 . . . allows transfer to a pretrial judge when there are common fact issues, even though in a given case the common issues might not outweigh the individual, case-specific issues."

question (or questions) of fact must be "material" because the Legislature conciously rejected that word. When the Legislature defined "related" as "involving one or more common questions of fact," it modified earlier versions of the bill that would have placed the word *material* in front of the phrase *issues of fact*, and it also changed the plural "issues" to "one or more issues."[6] And when the supreme court meant "material fact" in other rules, it said so.[7]

The proper relatedness requirement is satisfied here, where one enormous hurricane is the context and background for each of these cases. The majority says that the "occurrence" of the hurricane is not a disputed fact. That is true. Everyone agrees that Hurricane Rita occurred. But the hurricane is the foundation and the context for all these cases. It stands in the background and cannot be escaped. It is inconceivable that any of these cases can be tried without substantial evidence concerning Hurricane Rita and what it did. Each case will unfold against the background of related fact questions such as whether Rita's wind, and the rising water and rainfall it produced, were of sufficient magnitude to damage residential structures and foundations as alleged.[8]

---

[6] The Legislature dropped the word "material" and also made clear that one common question of fact was enough. *Compare* the House and engrossed versions of H.B.4 ("'Related' means that cases involve common material issues of fact") *with* the later Senate version and enrolled and final versions (panel may transfer "cases involving one or more common questions of fact"). The successive versions of the bill are available at:
*http://www.capitol.state.tx.us/BillLookup/Text.aspx?LegSess=78R&Bill=HB4.*

[7] Rule 166a, for example, authorizes a traditional summary judgment when there is "no genuine issue of material fact" and the movant is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). The rule also refers to issues of "material fact" in subdivisions (e) and (i). By contrast, rule 174 refers simply to "common question of law or fact."

[8] In addition to the background presence of Hurricane Rita, there are specific common issues in these cases, which are already being contested. We are told that several homeowners sought help from FEMA, that there are limits on what assistance can be accepted from FEMA and also from an insurer, and that FEMA records cannot be obtained through discovery without the homeowner's consent. These assertions—some of them factual and undenied and therefore accepted as true under Rule 13.3 (j)—would benefit from uniform and consistent treatment in each case. In addition, plaintiffs seek attorneys' fees in each case, including a 40% contingent fee; defendants say they want to inquire about counsel's economies of scale, since each of these cases has virtually identical form petitions, interrogatories, and requests for production.

4

These cases from the same massive hurricane are related. It would serve the goals of convenience, efficiency, and justice to have one pretrial court decide all the common issues the same way and without inconsistencies.  This is all that Rule 13 requires.  Indeed the rule was designed to cover cases like these.  I would grant the motions as to all movants.

_____
David Peeples
Presiding Judge

**OPINION DELIVERED:** September 5, 2008

5